UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARNEAT MARIE JONES,

     Plaintiff,

v.                                                                      Case No. 8:25-cv-1600-WFJ-LSG

FLORIDA HOSPITAL PHYSICIAN
GROUP, INC.,

     Defendant.

_____/

## **ORDER**

Before the Court is Defendant Florida Hospital Physician Group, Inc.'s

Motion to Dismiss Amended Complaint (Dkt. 20), Plaintiff's response (Dkt. 21),

and Defendant's Reply (Dkt. 24).  After careful consideration of the allegations of

the Amended Complaint (Dkt. 10), the submissions of the parties, and the entire

file, the Court concludes the motion to dismiss is due to be granted in part and

denied in part.

## **BACKGROUND**

Plaintiff Charneat Marie Jones brings this employment discrimination action

against her former employer, Florida Hospital Physician Group, Inc. d/b/a

AdventHealth Medical Group ("AdventHealth").  The three-count Amended

Complaint alleges race-based discrimination under 42 U.S.C. § 1981 ("Section

1981") and Title VII of the Civil Rights Act ("Title VII"), and retaliation under Title VII.

**Incidents leading up to termination**

The Amended Complaint alleges the following facts. Plaintiff Jones was employed by AdventHealth in Tampa from June 11, 2018, through March 13, 2023, when she was terminated. Dkt. 10 ¶¶ 10, 13, 32. With over 31 years of experience as a medical assistant, Plaintiff worked for AdventHealth as a Certified Medical Assistant, until she was promoted on January 20, 2023, to Physician Practice Clinical Coordinator. *Id.* ¶¶ 20, 21.

In November 2021, Plaintiff asserts that her director (Caucasian) "made discriminatory comments about Ms. Jones' [Plaintiff's] hair." *Id.* ¶ 22. In February 2022, Plaintiff witnessed her project manager (Caucasian) instruct a "room full of brown people" to "keep it vanilla." *Id.* ¶ 23. Plaintiff claims that in March 2022, there were "false accusations of 'aggression' based on racial stereotypes." *Id.* ¶ 56 c.

In April 2022, Plaintiff filed a complaint with Human Resources ("HR") concerning racial discrimination. *Id.* ¶ 64 a. On June 13, 2022, Plaintiff filed an EEOC discrimination complaint. *Id.* ¶¶ 24, 64 b.

In January 2023, Plaintiff began reporting to new supervisors, none of whom were African American. *Id.* ¶¶ 25, 26. On February 9, 2023, the Physician

2

Practice Manager grabbed Plaintiff's arm and "invaded her personal space," which was observed by a physician. *Id.* ¶ 27. The next day, February 10, this manager "made a racially charged 'black balled' comment during a meeting." *Id.* Plaintiff alleges that she was "subjected to demeaning behavior, including [the same manager] stooping when speaking to her." *Id.* ¶ 28.

On February 23, Plaintiff asserts she was falsely accused of an IT security breach while she was out of the office ill. *Id.* ¶ 29. Interestingly, IT's investigation found activity from both the office and home IP addresses, and a physician in the practice mentioned it was likely a system error with pending prescriptions. *Id.* Despite these alleged facts, on February 24, Defendant revoked Plaintiff's system access, which hampered her ability to perform her job. *Id.* ¶ 30.

On March 3, 2023, Plaintiff requested a transfer to another department, which was denied. *Id.* ¶ 31. Plaintiff describes this denial as "a pattern of limiting [her] advancement opportunities within the organization." *Id.* Finally, on March 13, Defendant terminated Plaintiff "allegedly for violations of company policies" without any warning or prior write-up. *Id.* ¶ 32.

**Post-termination**

*Plaintiff's allegations*

On March 29, 2023, Plaintiff dual filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the

3

Florida Commission on Human Relations ("FCHR").  *Id.* ¶ 17.  The charge alleged

race discrimination and retaliation.  *Id.*  On March 21, 2025, Plaintiff alleges the

EEOC issued a Notice of Right to Sue regarding her EEOC charge.  *Id.* ¶ 18.

> *Defendant's motion and exhibits*

Defendant's motion adds the following assertions with supporting exhibits

regarding actions taken by the FCHR.  Dkt. 20 at 2–6.  The FCHR investigated the

charge of discrimination, and on September 28, 2023, issued its No Cause

Determination finding in pertinent part:

> The Commission's Office of General Counsel reviewed all available
> evidence and Investigative Memorandum, and made a recommendation
> to me, as Executive Director of the Commission, that it is unlikely that
> unlawful discrimination occurred in this matter.
> . . . .
> Complainant may request an administrative hearing with the Division
> of Administrative Hearings [("DOAH")] by filing a Petition for Relief
> within 35 days[.]

Dkt. 20-2; Dkt. 20-6.  Plaintiff, through counsel, filed a timely petition on October

26, 2023.  Dkt. 20-3.  The petition alleges racial discrimination and retaliation.  *Id.*

The matter was referred to DOAH and assigned an Administrative Law

Judge ("ALJ").  Dkt. 20-4.  The ALJ conducted an evidentiary hearing in late June

2024.  Dkt. 20 ¶ 5.  On October 18, 2024, the ALJ issued a 26-page Recommended

Order finding Defendant committed no unlawful employment practice and

recommending the FCHR dismiss the petition.  Dkt. 20-4.  Plaintiff did not submit

exceptions to the Recommended Order, despite being granted an extension to December 6, 2024.  Dkt. 20-6 at 3.

On January 21, 2025, the FCHR entered its Final Order Dismissing Petition for Relief from an Unlawful Employment Practice ("Final Order").  Dkt. 20-6.  In its Final Order, the FCHR found the ALJ's findings of fact to be supported by competent and substantial evidence.  Dkt. 20-6 at 3.  The ALJ's application of the law to the facts were also found "to result in a correct disposition of the matter." *Id.*  The FCHR fully adopted the ALJ's findings of fact and conclusions of law and dismissed the petition with prejudice.  *Id.*  The Final Order provided the notice and instructions to appeal the decision to the proper Florida District Court of Appeal. *Id.*  The appeal period is within "thirty (30) days of the date this Final Order is filed with the Clerk of the Commission."  *Id.*  An appeal was not taken.

On March 21, 2025, the EEOC issued the Notice of Right to Sue, which provides: **"[Y]our lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice."**  Dkt. 20-7 at 2 (emphasis in original).  The Notice further states:

> [Y]ou must file a complaint in court **within 90 days of the date you** *receive* **this Notice.** Receipt generally means the date when you (or your representative) received the document.

Dkt. 20-7 at 3 (emphasis in original).  This lawsuit was filed within the 90-day period, on June 19, 2025.  Dkt. 1.

The initial complaint named AdventHealth Medical Group as defendant, and the summons was issued for service on AdventHealth Medical Group.  Dkts. 1, 3, 6-1.  The initial pleading identifies the Defendant AdventHealth Medial Group as a Florida limited liability company in Altamonte Springs, Florida, conducting business in Tampa, Florida.  Dkt. 1 ¶¶ 12, 13.  On July 15, 2025, Plaintiff filed the Amended Complaint, as a matter of course, to name the "correct legal entity" of Defendant.  Dkt. 10 at 1.  The Defendant is now named as "Florida Hospital Physician Group, Inc. d/b/a AdventHealth Medical Group" and identified as a Florida not-for-profit corporation with its principal place of business in Tampa.  Dkt. 10 ¶ 12.

## LEGAL STANDARD

A complaint survives dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations need not be detailed, but the plaintiff is still required to provide more than mere labels or conclusions, and the facts must plausibly lay the grounds for an entitlement to relief.  *Twombly*, 550 U.S. at 555.  The court must accept the facts, not conclusions, as true and view them in the light most favorable to the nonmoving party.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Documents may be considered on a 12(b)(6) motion to dismiss, if the documents are central to, referenced in, or attached to the complaint, as well as matters judicially noticed. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544 (2007). Documents attached to the motion to dismiss may also be considered without converting the motion into one for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Haimbaugh v. Citrus Cnty. Fla. Dept. of Health*, No. 5:23-cv-282-BJD-PRL, 2024 WL 3033987, at *2 (M.D. Fla. Apr. 3, 2024) (considering Right to Sue letter without converting motion to dismiss to motion for summary judgment). The attached documents must also be undisputed, which means their authenticity is not challenged. *Horsley*, 304 F.3d at 1134; *Hodge v. Orlando Util. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 5067758, at *3 n.2 (M.D. Fla. Dec. 15, 2009) (citing *Horsley* and *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005)).

## DISCUSSION

Defendant argues that Plaintiff is collaterally estopped from bringing Count I for violations of Section 1981. As to Counts II and III, Defendant asserts that the Title VII claims are untimely and must be dismissed with prejudice. Defendant also challenges the Amended Complaint as an impermissible "shotgun pleading" based on improper commingling of distinct legal theories—disparate treatment,

7

hostile work environment, and retaliation.  Taking the Amended Complaint's allegations as true and construing them in the light most favorable to Plaintiff, the Court addresses each ground.

**Collateral Estoppel as to Count I for violations of Section 1981**

This case involves an unreviewed state administrative decision.  The FCHR's Final Order, after a full hearing with witnesses and both parties, set forth the instructions to appeal the decision to the state appellate court.  *See* Dkt. 20-6.  Plaintiff did not file an appeal with the court.  The EEOC issued its Notice of Right to Sue two months after the Final Order, and this case was filed.

"Collateral estoppel, or issue preclusion, requires that once a court decides an issue necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties."  *Barrington v. Fla. Dep't of Health*, 112 F. Supp. 2d 1299, 1303 (M.D. Fla. 2000).  When the FCHR, as here, has acted "in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate," its findings are entitled to preclusive effect, even if the agency factual findings are not reviewed by a state court.  *Quinn v. Monroe, Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)).  In Florida, collateral estoppel applies where: (1) identical issues were presented in a prior proceeding; (2) the issues in the prior litigation were a critical and necessary part of the prior

8

determination; (3) there was a full and fair opportunity to litigate the issues in the prior proceeding; (4) the issues were actually litigated in the prior proceeding; and (5) the parties in the two proceedings are identical. *Pumphrey v. Dep't of Child. & Fams.*, 292 So. 3d 1264, 1266 (Fla. 1st DCA 2020) (citation omitted). Collateral estoppel applies to administrative orders and decisions and extends to facts and legal issues concerning those facts. *See McCrimmon v. Daimler Chrysler Corp.*, No. 6:05-cv-10-Orl-19DAB, 2005 WL 8159946, at *4 (M.D. Fla. Nov. 9, 2005) (finding that Section 1981 claims were actually litigated in FCHR proceeding and Plaintiff was collaterally estopped from challenging FCHR's findings in the complaint).

Plaintiff's Section 1981 claims mirror the issues resolved and involve the identical parties—whether Defendant discriminated against Plaintiff based on her race. Although Plaintiff's claims were brought before the FCHR under the FCRA, the burden of establishing a *prima facie* case is the same in this Section 1981 case. *See Bender v. Miami Shores Village*, 578 F. App'x 822, 824 n.2 (11th Cir. 2014) (noting *prima facie* case of race discrimination under Section 1981 is same as Title VII, which applies to FCRA) (citations omitted).[1] At the proceedings before the

---

[1] *See also Blain v. Centurion of Fla., LLC*, No. 8:20-cv-49-T-24SPF, 2020 WL 821457, at *3 (M.D. Fla. Feb. 19, 2020) ("Discrimination and retaliation claims brought under [Section] 1981 and Title VII are analyzed under the same framework."); *Ducksworth v. Strayer Univ., Inc.*, No. 2:16-cv-1234-JEO, 2019 WL 1897278, at *15 (N.D. Ala. Apr. 29, 2019) (same).

FCHR, Plaintiff was represented by counsel and participated in a three-day evidentiary hearing before an ALJ. Plaintiff presented testimony from four witnesses, submitted exhibits, testified on her own behalf, and cross-examined each of Defendant's witnesses. The ALJ, in a thorough 26-page Recommended Order, found that Plaintiff failed to establish her *prima facie* case of discrimination, harassment, and retaliation. *See* Dkt. 20-4. As to any improper discriminatory or retaliatory motive, the ALJ found that Defendant terminated Plaintiff "because it found she had violated its Standards of Conduct by not being truthful about the February 23 incident."[2] *Id.* at 24. The ALJ's recommendation was adopted in a Final Order. *See* Dkt. 20-6.

Section 1983, unlike Title VII, is a "Reconstruction civil rights statute" that does not foreclose "the adaptation of traditional principles of preclusion" to the "factual findings of a state administrative agency." *Elliott*, 478 U.S. at 799. *Elliott* reached a different conclusion as to Title VII, holding that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect in Title VII actions in federal court." *Id.* at 796; *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1022 (11th Cir. 2001) (quoting *Elliott*); *Quinn*, 330 F.3d at 1328–29

---

[2] "Advent Health learned about two incidents that appeared as if [Plaintiff's] credentials were being used to access the system. First, that morning [Defendant's office employee] received a call from a patient asking about a message she received electronically from Jones earlier that morning about a urine culture. [Defendant's office employee] confirmed with the patient's physician there had been no authorization for ordering the urine culture and learned that the physician had not spoken to [Plaintiff] about ordering the culture." Dkt. 20-6 at 11.

(discussing collateral estoppel and *Elliott*). Although *Elliott* specifically addressed § 1983, the reasoning applies equally to Section 1981. Accordingly, Plaintiff's Section 1981 claim is barred by collateral estoppel, and Count I is due to be dismissed with prejudice.

The Court next addresses the issue of whether the Amended Complaint adding Florida Hospital Physicians Group, Inc. as a defendant relates back to the timely-filed original complaint.

**Timeliness of the Title VII claims**

Under Title VII, a plaintiff must file a lawsuit within 90 days after the giving of the EEOC's notice that the charge is dismissed. 42 U.S.C. § 2000e-5(f)(1); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999). The 90-day deadline is mandatory, but not jurisdictional. *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550-52 (2019) (holding Title VII's charge-filing provisions are non-jurisdictional but nonetheless mandatory). Even though mandatory, the 90-day period is subject to equitable tolling, which requires a showing of extraordinary circumstances. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017). To that end, the plaintiff must show circumstances beyond her control and "unavoidable even with diligence." *Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999).

Timeliness concerning the 90-day window must be decided "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case." *Zillyette*, 179 F.3d at 1340–41.  The Court examines the pleadings, the motion to dismiss, response, reply, all undisputed exhibits, and the applicable law.  *See Day*, 400 F.3d at 1276; *Horsley*, 304 F.3d at 1134.  Public records from Florida's sunbiz.org may also be considered.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

*Relation back*

In cases where federal law provides the statute of limitations, Federal Rule of Civil Procedure 15(c) governs the "relation back" of amendments to pleadings. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).  An amended pleading "can relate back to an earlier pleading, thus allowing it to adopt the latter's filing date and not be time-barred."  *Makro Capital of Am., Inc. v. UBS AG*, 542 F.3d 1254, 1258 (11th Cir. 2008).  When the pleading is amended to add or substitute a party, Rule 15(c)(1)(C) controls whether the amended complaint relates back. *Powers v. Graff*, 148 F.3d 1223, 1225 (11th Cir. 1998), *abrogated on other grounds*, *Mungin v. Sec'y, Fla. Dep't of Corrs.*, 89 F.4th 1308, 1321 (11th Cir. 2024).[3]

---

[3] *Mungin* clarifies the appellate standard of review of Rule 15(c) is no longer the district court's equitable discretion.

Rule 15(c)(1)(C) provides:

> (1) ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
> . . .
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii)    knew or should have known that the action would have been brought against it, but for the mistake concerning the proper party's identity.

*Id.* (emphasis in original).  This rule has four elements.  First, the amended complaint must assert a claim that arose out of the same occurrence as set out in the earlier-filed complaint.  Second, the added party must receive notice of the amended pleading within the time for service under Rule 4(m), which is 90 days.  Third, the new or substituted party cannot be prejudiced in defending the action.  Fourth, the new defendant either knew or should have known about the action "but for a mistake" in initially identifying the proper party.  The plaintiff carries the burden of establishing she met Title VII's 90-day filing requirement.  *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002).

The parties contest only the mistake provision, Rule 15(c)(1)(C)(ii).  The Court first decides whether the plaintiff made a "mistake concerning the proper party's identity."  Reaching the second inquiry—whether the proper party knew or should have known the action would be brought against it but for an error—is

13

contingent upon a finding of mistake.  *See Krupski*, 560 U.S. at 548–49; *U.S. v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1364 (M.D. Fla. 2018) (referring to "two-part inquiry" of *Krupski*).

### *Relevant chronology*

Prior to this action, throughout the entire two years of administrative proceedings, the respondent was "AdventHealth Medical Group," not Florida Hospital Physician Group, Inc.  Notably, both counsel who appeared and participated before FCHR, DOAH, and EEOC are the precise counsel representing their respective clients in this action.

On June 19, 2025, Plaintiff filed this lawsuit within 90 days from receipt of the EEOC Notice of Right to Sue.  The initial complaint identified Plaintiff's employer as "AdventHealth Medical Group, a Florida Limited Liability Company."  Dkt. 1.  A summons was issued and served on "AdventHealth Medical Group" at 900 Hope Way, Altamonte Springs, Florida.[4]  Dkts. 3, 6.  According to the sunbiz.org record provided, AdventHealth Medical Group is not an LLC but is, instead, a fictitious name or "d/b/a" registered and owned by Florida Hospital Physician Group, Inc.  Dkt. 20-8.  The owner's address is listed in Tampa.

---

[4] On AdventHealth's website, the national corporate headquarters is located at this address.  *See* www.adventhealth.com; https://jobs.adventhealth.com/our-locations/adventhealth-corporate/

On July 13, 2025, before responding to the complaint, Defendant's counsel, somehow having notice of the lawsuit, emailed Plaintiff about the incorrect party Defendant. Dkt. 20-9 at 4. The email identified the correct Defendant as Florida Hospital Physician Group, Inc., and stated that AdventHealth Medical Group is "a fictious entity [that] cannot be sued in its own name." *Id.* Defendant's counsel asked if Plaintiff would be willing to amend the complaint "to identify the correct legal entity" so that it could respond substantively. *Id.*

Plaintiff filed an Amended Complaint two days later on July 15, which was 116 days after the EEOC Notice, and named "Florida Hospital Physician Group, Inc. d/b/a AdventHealth Medical Group" as the Defendant. Dkt. 10. Defendant's counsel emailed Plaintiff again to point out that the summons was incorrectly issued to AdventHealth Medical Group at an Altamonte Springs address. Dkt. 20-9 at 2. The email included an attached sunbiz.org record for Florida Hospital Physician Group, Inc., listing it as a Florida not-for-profit corporation with the correct address for service on the registered agent. Dkt. 20-9 at 2, 6. Plaintiff corrected the summons, and Defendant's counsel agreed to waive service. Dkts. 13, 14.

*Mistake versus lack of knowledge*

Defendant argues that Plaintiff's naming a nonexistent LLC was not a mistake but lack of knowledge or diligence on her part and, therefore, does not

15

relate back for purposes of Title's VII's EEOC limitations period. Case law discusses a mistake in the context of Rule 15(c) concerning "John Doe" fictitious names and also in misnaming or misidentifying a corporate entity. These facts fall within a unique category: relation back when the earlier complaint was filed against a nonentity.

Undoubtedly, Plaintiff incorrectly described AdventHealth Medical Group's legal structure as an LLC. As to legal structure, the sunbiz.org filings show that AdventHealth Medical Group was not a Florida LLC. Dkt. 20-8. A review of the public records at sunbiz.org, however, further reveals a plethora of various AdventHealth entities. In any event, Plaintiff sued a non-existent LLC, a non-entity.

As Plaintiff now knows, AdventHealth Medical Group is the fictitious name or "d/b/a" registered to Florida Hospital Physician Group, Inc., a not-for-profit corporation. *See* Dkt. 20-8 (sunbiz.org filings). A company's registered fictitious name does not create a separate legal entity but merely establishes another name for conducting business with no independent existence. *See Mastro v. Seminole Tribe of Fla.*, 578 F. App'x 801, 803 (11th Cir. 2014) (unpublished opinion) (citing Florida law); *United States v. Mesadieu*, 180 F. Supp. 3d 1113, (M.D. Fla. 2016) ("Notably, a "d/b/a" designation standing alone is not sufficient to join an independent entity as a defendant in a lawsuit."). Even though Advent Health

Medical Group is a fictitious or "doing business as" name registered to Florida Hospital Physician Group, Inc., a "d/b/a" does not have a legal identity separate from the registering company and therefore cannot be sued. *See Doe K.R. v. Choice Hotels*, No. 6:23-cv-1012-JSS-LHP, 2025 WL 3469855, at *3 (M.D. Fla. Dec. 3, 2025) (noting that a plaintiff cannot sue a non-existent entity).[5]

The original complaint was served at an Altamonte Springs address, which Defendant asserts is not associated with either the registered principal office or agent of Florida Hospital Physician Group, Inc. or associated with AdventHealth Medical Group. *See* Dkt. 24 at 4 n.2; Dkt. 20-8. As Defendant contends, any ostensible service on a fictitious name, with no legal existence apart from the corporation, "cannot be attributed to the real party in interest." *Garcia v. Consumer Credit Union*, No. 24-cv-81141, 2024 WL 4813985, at *2 (S.D. Fla. Nov. 18, 2024) (citing *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 943 (11th Cir. 2022)), *report and recommendation adopted*, 2024 WL 4995929 (S.D. Fla. Dec. 6, 2024). Yet the Altamonte Springs address happens to be the national headquarters of AdventHealth.

Following the fundamental principle that a "d/b/a" does not exist apart from its owner, the general rule in federal court does not permit "fictitious-party

---

[5] *See also Anglin v. FL Fountainebleau Miami*, No. 22-cv-2181, 2022 WL 17344893, at *1 (S.D. Fla. Nov. 30, 2022) (dismissing *pro se* complaint where defendant "does not exist and is not the intended defendant of this lawsuit").

pleading." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

Exceptions are permitted, however, in "John Doe" cases. *See Powers*, 148 F.3d at 1226–27 (permitting relation back "*only* where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relations back where . . . there is a lack of knowledge of the proper party") (emphasis in original). The issue in "John Doe" cases is whether the plaintiff has sufficiently identified a real person in the required time to accomplish notice of suit. *See*, *e.g.*, *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999), *overruled in part on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003 (*en banc*); *Bostick v. McGuire*, No. 6:15-cv-1533-Orl-37GJK, 2016 WL 2811246 (M.D. Fla. Apr. 20, 2016), *report and recommendation adopted*, 2016 WL 2759114 (M.D. Fla. May 16, 2016).[6] A "John Doe" exists as a real person, however, and therefore a fictitious "d/b/a" does not fit neatly within that analysis because it does not exist apart from its owner—it is not a real entity.

The Court next turns to the cases addressing a mistaken identity of a real entity, keeping in mind that Plaintiff characterizes the amendment as a name

---

[6] *See also Dkt. 20 at 14 (citing Rodriguez v. Quinones*, 508 F. Supp. 3d 1198, 1202 (S.D. Fla. 2020)). *Rodriguez* analyzes mistake in the context of "John Doe."

correction or a misnomer.[7]  Defendant strongly urges that this situation amounts to Plaintiff's lack of knowledge or diligence, not a mistake about identity.  Relation back of Plaintiff's Title VII claims requires under Rule 15(c) a finding of mistake on the part of Plaintiff.

For purposes of Rule 15(c)(1)(C)(ii), a mistake is defined as "an error, misconception, or misunderstanding; an erroneous belief; a misunderstanding of the meaning or implication of something; a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention."  *Krupski*, 560 U.S. at 548–49 (citation modified).  In *Krupski*, the plaintiff initially named Costa Cruise rather than Costa Crociere.  The cruise passenger ticket listed both companies, and both companies were viable entities.  When the defendant informed the plaintiff of the correct entity, however, the plaintiff waited a while before seeking to amend.  In reversing the finding of no relation back, the Supreme Court wrote:

> That a plaintiff knows a party's existence does not preclude her from making a mistake with respect to that party's identity. . . . The reasonableness of the mistake is not itself an issue.  As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression.  That kind of deliberate mistaken choice does not foreclose a finding that Rule15(c)(1)(C)(ii) has been satisfied.

---

[7] As stated by Plaintiff concerning a mistake, she "merely corrected the formal name of the defendant entity" from AdventHealth Medical Group to Florida Hospital Physician Group, Inc., and "both entities refer to the same defendant."  Dkt. 21 at 9, 10.

*Id.* at 549. *Krupski* added that the plaintiff's dilatory conduct is not part of the analysis of the Rule's requirements. *Id.* at 552–53. A court, however, may consider the conduct in terms of the prospective defendant's understanding, not the plaintiff's, of whether the plaintiff initially made a mistake. *Id.* at 554.

Although *Krupsk*i involved confusion between two real entities, its reasoning is persuasive. Here, Plaintiff knew the party's existence, but was operating under the assumption that "AdventHealth Medical Group" was the correct name of the entity. This knowledge does not prevent her from making a mistake as to identity under *Krupski*. Moreover, the reasonableness of the mistake is not an issue to be considered, particularly when Plaintiff mistakenly sues an incorrectly named entity.

Through the entire proceedings before FCHR, both Plaintiff and Defendant were represented by counsel. From the charge of discrimination to the Final Order adopting the ALJ's recommendation, the entity named was always "AdventHealth Medical Group." Plaintiff was unaware that she had failed to correctly name her employer until Defendant's counsel revealed that the proper identity is Florida Hospital Physician Group, Inc., and that "AdventHealth Medical Group" is its registered fictitious name. Upon her learning of this mistake, Plaintiff amended the complaint within two days. Defendant suffered no prejudice whatsoever.

Indeed, counsel knew of this lawsuit because Plaintiff served the complaint at the address of AdventHealth's national corporate headquarters in Altamonte Springs.

Notwithstanding an error in naming, Defendant maintains that Plaintiff was required to sue a real entity, even if improperly identified. *See Brown v. VCNA Prestige Concrete Prods., Inc.*, No. 6:13-cv-979-Orl-31TBS, 2014 WL 1293266, at *3 (M.D. Fla. Mar. 31, 2014); *Hodge v. Orlando Util. Comm'n*, No. 6:09-cv-1059-Orl-19DAB, 2009 WL 5067758 (M.D. Fla. Dec. 15, 2009). In *Brown*, an employment discrimination case, the plaintiff misunderstood the complex corporate structure of his employer, VCNA. The court granted relation back and found that the "rule that a plaintiff may not rely on a lack of knowledge to establish a mistake for purposes of relation back" did not apply because "an incorrect choice based on information is not the same as a lack of knowledge." *Brown*, at *3. There, as noted by Defendant, the plaintiff initially chose a real entity related to his employer.[8]

In *Hodge*, a personal injury case, the plaintiff initially named his employer as Baker's Transport Service but knew the correct identity was Dedicated Transport, as evidenced by the EEOC charge filed against Dedicated Transport. There, the plaintiff consciously chose between two real entities. The *Hodge* court

---

[8] *See also Estate of Schoenfeld*, 344 F. Supp. 3d at 1365 (comparing cases on what circumstances give rise to a finding of mistake).

found that the plaintiff's prior knowledge evidenced a deliberate choice and denied relation back.

The Court finds instructive a case that distinguishes *Hodge* in the context of Title VII. *See Follese v. Jassas Capital LLC*, No. 2:18-cv-40-FtM-99MRM, 2018 WL 1426398 (M.D. Fla. Mar. 22, 2018). The plaintiff in *Follese* filed suit against Best Western International, Inc., and did not realize the proper party and owner of the hotel was Jassas Capital LLC. In granting relation back, the court noted that the EEOC Right to Sue Letter only referred to Best Western Airport Inn and therefore did not demonstrate the plaintiff's knowledge of Jassas Capital LLC's identity. The court contrasted *Hodge* "where the plaintiff knew the identity of the newly-named party at the time the initial complaint was filed and deliberately chose not to sue that party in the initial complaint." *Follese*, at *2 (quoting *Hodge*). As in *Follese*, Plaintiff's EEOC Notice referred to AdventHealth Medical Group, and Plaintiff did not realize the proper party was Florida Hospital Physician Group, Inc.

Even though the Court should not consider Plaintiff's prompt, non-dilatory amending the complaint within two days of learning of the correct name, it is difficult to reconcile that the respondent named throughout the administrative proceedings, including the Final Order of FCHR and the EEOC Notice, was always "AdventHealth Medical Group" with Defendant's position that Plaintiff

22

knew and understood the corporate structure of AdventHealth at the time of filing suit. These circumstances support a finding of mistaken identity followed by a timely name correction as opposed to a deliberate but incorrect choice to sue one of two known entities. In short, Plaintiff harbored a misunderstanding, given the prior proceedings moved forward solely against AdventHealth Medical Group. The Court finds that her deliberate but mistaken decision to name the only entity recognized in the administrative proceedings does not foreclose relation back.

Finally, the Court addresses Defendant's argument that Plaintiff should have known the correct name of her employer per her own tax documents. *See* Dkt. 20 at 16 ("During the underlying administrative proceedings, Plaintiff marked her W-2s as exhibits identifying Florida Hospital Physician Group, Inc. as her employer."). The W-2 exhibits purportedly used during the administrative proceedings do not establish that Plaintiff should have known the identity of the correct defendant. Like the cruise ticket in *Krupski* listing two different entities, that Plaintiff may have known the contents of the tax documents does not foreclose the possibility that she misunderstood crucial facts about her employer's corporate structure. The face of the initial complaint indicates a misunderstanding, and Defendant has articulated no strategy that it thought Plaintiff was pursuing in suing a defendant that could not legally provide relief.

23

Having determined Plaintiff's error was a mistake, the Court unequivocally finds that Florida Hospital Physician Group, Inc. was not prejudiced. Defendant knew or should have known that it would be named in the original complaint as evidenced by its participation in the lengthy administrative proceedings. Therefore, the Title VII claims in the Amended Complaint relate back to the filing of the initial complaint, and equitable tolling need not be reached.[9]

## CONCLUSION

Accordingly, Defendant's motion to dismiss (Dkt. 20) is granted as to Count I and denied as to Counts II and III. Count I is dismissed with prejudice. Counts II and III will proceed. Defendant must file its answer and defenses to Counts II and III within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on March 19, 2026.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:** Counsel of Record

---

[9] As to Defendant's shotgun pleading arguments, the Court finds that Defendant is sufficiently on notice of the claims brought against it in Counts II and III.

24